**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PATH TO RICHES, LLC, directly and derivatively on behalf of M.M.T. DIAGNOSTICS (2014), LTD., <br> Plaintiff, | : <br> : <br> : <br> : <br> : | |
| v. | : <br> : | CIVIL ACTION |
| CARDIOLYNC, INC., GAMLIEL KAGAN a/k/a/ GAM KAGAN, and DR. JACOB LEVY, <br> Defendants, <br> and <br> M.M.T. DIAGNOSTICS (2014), LTD. a/k/a GAM KAGAN, and DR. JACOB LEVY, <br> Nominal Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | No. 17-161 |

McHUGH, J.                                                          February 21, 2018

## MEMORANDUM

This is a dispute over whether one Israel-based company improperly obtained confidential and proprietary information from another. Plaintiff Path to Riches purports to bring direct and derivative claims on behalf of MMT, an Israeli company in which it holds a majority share, against Defendants CardioLync and its owners. Defendants now move to dismiss based on lack of personal jurisdiction, lack of subject matter jurisdiction, and *forum non conveniens*. Without deciding either jurisdictional issue, I find that Israel is an adequate alternative forum for this dispute, and that the deference owed to Plaintiff's choice of forum is outweighed by the substantial private and public interests in holding this proceeding in Israel. Specifically, all of the parties and essential non-party witnesses are either Israeli residents or have significant ties to Israel; two of the three companies are based there; and Israeli law likely governs most of Plaintiff's claims. Accordingly, Defendants' motion to dismiss will be granted on FNC grounds.

## I. Background

This case arises from Plaintiff Path to Riches, LLC's (PTR's) allegation that Defendants

Gamliel Kagan (Gam) and Jacob Levy (Dr. Levy), through their company, Defendant CardioLync,

misappropriated proprietary information belonging to M.M.T. Diagnostics (2014), Ltd., by inducing

MMT's CEO to breach his contractual and fiduciary duties.  Because I ultimately decide this

motion on FNC grounds, the location of and relationship among the parties and witnesses are of

primary importance.

PTR is a limited liability company organized under the laws of Delaware and based in New

York state.  It is wholly owned by Dr. and Ms. Minkowitz, non-parties whose primary residence is

in New York.  The Minkowitzes have a second home in Israel, where they visit each year for

extended periods and where their children attend school.  Their neighbor in Israel is Jeremy Kagan,

an Israeli who is not a party but around whom this dispute centers.  Jeremy's brother is Defendant

Gam, who also resides in Israel.

In 2013, Jeremy and Dr. Minkowitz entered into a telemedicine business venture, which the

pair would eventually incorporate under the laws of Israel as MMT.  (MMT is named as both a

plaintiff and a nominal defendant in this action.)  MMT initially focused on pathology, but

according to PTR, hoped to expand into other fields, including cardiology.  Jeremy owns 40 percent

of MMT, and PTR (the Minkowitzes' company) owns the remaining 60 percent.  Although MMT's

incorporation documents provide for a five-member board of directors—three to be appointed by

Dr. Minkowitz and two by Jeremy—Jeremy is the sole board member. Schreiber Decl. ¶ 22, ECF

No. 14.  In 2014, Jeremy also became the CEO of MMT via an employment agreement created

under the laws of Israel.  He remained in that post through 2015.

Although MMT is based in Israel, PTR alleges that Jeremy and Dr. Minkowitz agreed in

August 2015 to hire two people to work on MMT's product in New York.  Jeremy allegedly refused

to cooperate with these employees or speak with them by phone, and "never traveled to the United States to visit" them. Compl. ¶ 44.  PTR alleges that in November 2015, "as a result of Gam's funding," a cease and desist letter was served upon Dr. Minkowitz and the New York employees claiming they were misappropriating MMT's confidential information.  Then, on January 26, 2016, Jeremy filed a lawsuit individually and on behalf of MMT in New York state court alleging that Dr. Minkowitz had formed a new company and was misappropriating MMT's intellectual property.

In this lawsuit, PTR alleges the opposite.  On the same day that Jeremy sued Dr. Minkowitz, Gam and Dr. Levy (a cardiologist who is Jeremy's brother-in-law), incorporated CardioLync in Delaware—Gam and Dr. Levy are its shareholders and directors.  CardioLync is a cardiology telemedicine company based in Israel, and PTR alleges that it targets the same market as MMT. PTR claims that Gam and Dr. Levy, through CardioLync, misappropriated MMT's proprietary information by inducing Jeremy to breach his fiduciary duties and employment agreement with MMT.  PTR brings one federal and nine state claims "directly and derivatively" on behalf of MMT.[1]

Defendants now move to dismiss for lack of subject-matter jurisdiction, lack of personal jurisdiction over Gam and Dr. Levy, and on the basis of FNC, arguing that Israel is the more appropriate forum.  Central to Defendants' subject matter jurisdiction argument is their claim that PTR lacks standing because it has not complied with Israeli requirements for bringing a shareholder's derivative action on behalf of MMT.  The parties have provided dueling affidavits as to what Israeli law requires and whether PTR should be exempted from Israel's pre-suit demand requirement. Schreiber Decl. ECF No. 14; Stein Decl. ECF No. 22.

---

[1] PTR asserts the following claims:  Misappropriation of Trade Secrets Under the Defense of Trade Secrets Act, 18 U.S.C. § 1836 (2016), Tortious Interference with Contractual Relations and with Prospective Economic Advantage, Usurpation of Corporate Opportunities, Aiding and Abetting Breaches of Fiduciary Duties, Civil Conspiracy, Unjust Enrichment, Champerty, Maintenance, and Constructive Trust.

## II. Standard

Although Defendants raise multiple grounds for dismissal, this case calls for resolution of only one: *forum non conveniens* (FNC). The FNC doctrine empowers federal courts to dismiss an action when "a foreign tribunal is plainly the more suitable arbiter of the merits of the case." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). When deciding a motion to dismiss that is based on FNC and other grounds, courts have "discretion to respond at once to a defendant's [FNC] plea, and need not take up first any other threshold objection." *Id.* Thus, where "considerations of convenience, fairness, and judicial economy so warrant," courts may exercise their discretion to dismiss on FNC grounds without deciding any jurisdictional questions. *Id.* In this case, FNC considerations "weigh heavily in favor of dismissal"—as explained below—and the existence of subject-matter and personal jurisdiction is "difficult to determine."[2] *See Sinochem*, 549 U.S. at 436. I therefore "take the less burdensome course" and dismiss on FNC

---

[2] Without deciding either jurisdictional question, I note that the grounds for both personal and subject-matter jurisdiction are tenuous. On personal jurisdiction, Delaware law makes clear that Defendants Levy and Gam's status as shareholders or as directors of CardioLync is an insufficient basis for personal jurisdiction under the state's long-arm statute, Del. Code Ann. tit. 10, § 3104 (West 2008). *See Venoco, Inc. v. Marquez*, 2003 WL 21026787, at *3 (D. Del. 2003) (citing *Pestolite, Inc. v. Cordura Corp.*, 449 A.2d 263, 267 (Del. Super. 1982)). The allegation that Levy and Gam incorporated CardioLync in Delaware could be enough, but only if that "purposeful" act of incorporation "is an integral component of the total transaction to which plaintiff's cause of action relates." *See MIG Investments LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 504 (D. Del. 2012); *see also Cairns v. Gelmon*, 1998 WL 276226, *3 n.4 (Del. Ch. 1998). It is not at all clear that Levy and Gam's incorporation of CardioLync is an integral component of all (or any) of PTR's claims.

As to subject-matter jurisdiction, PTR has alleged a patently inadequate basis for diversity jurisdiction, as complete diversity is unquestionably lacking; both the plaintiff and defendant corporations (PTR and CardioLync) are incorporated in, and therefore "reside" for purposes of diversity jurisdiction, in Delaware. Although the companies' ties to Delaware are limited to their incorporation there—a feebleness that will be relevant to the FNC analysis—those limited ties are enough to establish corporate residency, and therefore destroy diversity, for § 1332 jurisdiction. (PTR correctly notes that Defendants have not challenged diversity jurisdiction, *see* Pl.'s Answering Br. 10 n.4, ECF No. 21 [hereinafter "Pl.'s Resp."]; however, courts have an independent duty to determine if subject-matter jurisdiction exists, even without a challenge by a party, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).) Therefore, the only possible basis for subject-matter jurisdiction is federal question jurisdiction under the Defense of Trade Secrets Act (DTSA), which is also questionable. *See* 18 U.S.C. § 1836. Although there is very limited case law interpreting this young statute, Defendants raise two plausible deficiencies in the DTSA claim, Plaintiff's sole basis for federal jurisdiction. First, PTR has no statutory standing under the DTSA because MMT (a non-party)—not PTR—is the "owner" of any trade secret, *see* § 1839(4); and second, a fact-intensive objection that MMT's "product" remains in nascent stages of development such that it would not be protected by the DTSA, *see* § 1836(b)(1). *See* Defs.' Mot. Dismiss 8–9, ECF No. 13 [hereinafter "Defs.' MTD"].

grounds alone. *See id.*

FNC is a discretionary tool that empowers a district court "to dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Id.* at 425. The doctrine arises from a concern that plaintiffs sometimes attempt to force a trial at a "most inconvenient place for an adversary, even at some inconvenience to [the plaintiff]," in order to inflict upon an adversary "expense or trouble not necessary to [the plaintiff's] own right to pursue his remedy." *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 615 (3d Cir. 1991) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)).

To decide whether FNC is appropriate, district courts engage in a three-step analysis. First, the court must determine "whether an adequate alternate forum" exists to entertain the case. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010). If so, the court must next determine "the appropriate amount of deference to be given the plaintiff's choice of forum." *Id.* Finally, the court must weigh "the relevant public and private interest factors"—discussed below—to determine whether, on balance, "trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience." *Id.* If so, or if the chosen forum is "inappropriate" in light of the court's own "administrative and legal problems," the court "may, in its discretion," dismiss the case.[3] *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

As defendants seeking dismissal on the basis of FNC, Gam, Dr. Levy, and CardioLync bear the burden of persuasion as to all elements of the FNC analysis, *see Lacey v. Cessna Aircraft Co.*,

---

[3] This analysis applies FNC principles under federal law. The Supreme Court has not yet resolved the *Erie* question of whether federal courts sitting in diversity should apply state or federal FNC rules, *Piper Aircraft Co. v. Reyno,*, 454 U.S. 235, 249 n.13 (1981), and there is no guidance from the Third Circuit. Because I find no basis for Plaintiff's allegation that diversity jurisdiction exists, federal question is the only possible grounds for subject-matter jurisdiction, and therefore I apply federal FNC rules. No party argues for the application of Delaware FNC rules. *See, e.g.*, Defs.' MTD 19; Pl.'s Resp. at 21–22.

862 F.2d 38, 43–44 (3d Cir. 1988) (*Lacey I*), and there is generally a "strong presumption" in favor of the plaintiff's choice of forum," *Piper*, 454 U.S. at 255. That presumption, however, "applies with less force when the plaintiff or real parties in interest are foreign." *Id.*

In performing this FNC analysis, the court "generally becomes entangled in the merits" to the extent required to "scrutinize the substance of the dispute." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988). However, this "does not call for a detailed development of the entire case" or "require extensive investigation"—instead, the court may rely on the parties' affidavits. *Lony*, 935 F.2d at 614 (citations omitted). In fact, motions to dismiss based on FNC should be decided "at an early stage in the litigation, so that the parties will not waste resources on discovery and trial preparation in a forum that will later decline to exercise its jurisdiction over the case." *See Lony*, 935 F.2d at 614. Accordingly, Defendants' motion is appropriately decided now, before discovery has taken place and when relatively limited resources have been spent.

**III. Analysis**

Through several rounds of briefing containing undisputed facts and numerous affidavits, Defendants have satisfied their burden to show that an adequate alternative forum exists, and that the relevant private and public interests outweigh the deference owed to PTR's forum choice.

A. Adequate Alternative Forum

Defendants have met their burden to show that an adequate alternative forum exists because all of them are or soon will be Israeli residents and, moreover, have consented to personal jurisdiction there. In *Piper*, the Supreme Court explained that "[o]rdinarily, [the alternative forum] requirement will be satisfied when the defendant is amenable to process in the other jurisdiction." 454 U.S. at 255 n.22. Here, Gam's residence and CardioLync's principal place of business is Israel. Compl. ¶¶ 6–7, Defs.' MTD 20. (MMT—not a party but a nominal defendant and the real party in interest to Plaintiff—is also an Israeli company incorporated and based there.) Dr. Levy currently

resides in the state of Georgia but plans to relocate to Israel permanently to join his family there within the month.[4] Levy Suppl. Decl. 1, ECF No. 36. Moreover, all of the Defendants "would consent to the exercise of *in personam* jurisdiction over them by Israeli courts as a condition for dismissal of this proceeding under FNC." Defs.' Reply 3, ECF No. 25. The parties' undisputed residence in and consent to jurisdiction in Israel satisfies their duty to show that an alternative forum exists. *See Eurofins*, 623 F.3d at 154 n.9. (affirming that France was an adequate alternative forum where "each of the defendants [was] amenable to service of process . . . [and] none of the defendants [would] contest personal jurisdiction there"); *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1029 (3d Cir. 1980) (affirming FNC dismissal where defendant had consented to personal jurisdiction in Norway, despite plaintiffs' objection that defendant was "not really present there"); *see also Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 n.1 (3d Cir. 2013) (stating in dicta that Israel was an adequate alternative forum, despite plaintiff's contention that defendants would not be amenable to suit there, where defendants consented to Israeli jurisdiction).

But PTR argues that Defendants must do more to meet their burden. Plaintiff asserts that Defendants, in order to show that an adequate alternative forum exists, must prove not only that they are amenable to process in Israel, but also that there is an adequate cause of action under Israeli law that provides redress for Plaintiff's injury. Pl.'s Resp. 23; Pl.'s Sur-Reply 6–7, ECF No. 30. It is possible, albeit rare, for a plaintiff to show that an alternative forum is inadequate, despite defendants' amenability to service there—but there is nothing in the record to suggest that is the case here. In *Piper*'s often-cited footnote 22, the Supreme Court explained that in "rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." 454 U.S. at 254 n.22. This burden is not a light one.

---

[4] PTR asserts, without citing any legal basis, that Israeli courts might refuse to assert jurisdiction over Dr. Levy in spite of his consent. Putting aside for the moment that courts routinely allow FNC dismissal based on defendants' consent to jurisdiction in the alternative forum, Dr. Levy's imminent relocation to Israel should assuage any genuine concern by PTR on this point.

For example, the fact that the alternative forum provides for only limited discovery relative to that available in United States is not by itself enough to render the forum inadequate. *See Eurofins*, 623 F.3d at 161. Rather, *Piper* specified that an alternative forum would be inadequate if the record shows that the "forum does not permit litigation of the subject matter of the dispute." 454 U.S. at 254 n.22.

Here, Plaintiff has presented no evidence, or even argument, that a legal remedy would be unavailable to it in Israel. Instead, PTR seeks to reverse *Piper*'s language to impose an affirmative duty on Defendants to show that Israel *permits* litigation of PTR's claims. But the *Piper* Court made clear in its plain language and by reference to a case as an exemplar, that although courts may properly *consider* a plaintiff's evidence that there is no remedy in the alternative forum, the defendant has no affirmative duty show that a remedy exists. *See id.* (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 78 F.R.D. 445 (Del. 1978) (denying FNC where *plaintiff's* affidavits showed a complete lack of legal remedies under Ecuadorian tort law for two of plaintiff's three legal theories)); *see also Eurofins*, 623 F.3d at 161 (rejecting plaintiff's argument that France was an inadequate forum because of its limited discovery rules).

To support its expanded view of Defendants' burden, PTR relies on a single district court case: *H.Y.C. v. Hyatt Hotels Corp. See* Pl.'s Resp. 23 (citing *H.Y.C.*, 2016 WL 107924, *2 (D. Del. 2016)). *H.Y.C.*, in turn, relies on another district court case. *See id.* (citing *Lynch v. Hilton Worldwide, Inc.*, 2011 WL 5240730, at *2 (D.N.J. 2011)). This trail of citation breadcrumbs can eventually be followed back to its precedential source: *Piper*'s footnote 22. *See* 454 U.S. at 255 n.22. The precedential value of these cases are questionable, because, as discussed above, *Piper* imposes no duty on defendants to prove that a remedy exists in the alternate forum, and makes clear that, in the rare circumstances when a forum is deemed inadequate in spite of defendants' amenability to process there, it is because *plaintiffs* have presented evidence that the forum provides

no remedy.

Because PTR itself has presented no evidence that its legal remedies are unavailable in Israel—and because I find no basis for Plaintiff's assertion that Defendants must show the sufficiency of PTR's Israeli remedies—I easily conclude that Defendants' consent to the jurisdiction of Israeli courts renders that country an adequate alternative forum for this dispute.

B. Deference to Plaintiff's Choice of Forum

Having held that an alternative forum is available, I next decide how much deference to afford PTR's choice of forum. *See Eurofins*, 623 F.3d at 160. There is "ordinarily a strong presumption in favor of the plaintiff's choice of forum" and plaintiff's choice "should rarely be disturbed." *Piper*, 454 U.S. at 241. That presumption, however, "applies with less force when the plaintiff or real parties in interest are foreign." *Id.* at 255. Courts give foreign plaintiffs less deference not because of "xenophobia, but merely [out of] a reluctance to assume that the choice is a convenient one." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 179 (3d Cir. 1991) (*Lacey II*) (citing *Lony*, 886 F.2d at 634). This reluctance "can readily be overcome by a strong showing of convenience" by the plaintiff. *Id.*

Defendants argue that PTR's choice of forum deserves "little or no deference" because it brings this action merely as a shareholder of MMT (a foreign corporation) and should therefore be treated as a foreign plaintiff for purposes of FNC. Defs.' MTD 20–21. Defendants also argue that PTR is based in New York and is "fully owned and controlled by New York residents," "nearly all of the facts giving rise to the Complaint" occurred in a foreign country, "none of the parties have any connection to Delaware," and "the dispute lacks any material connection to this forum." Defs.' MTD 20–21; Defs.' Reply 1–2. In response, PTR simply counters that it is "entitled to a high degree of deference" because it is a Delaware company "that operates in New York and its owners both reside in the United States." Pl.'s Resp. 22.

Although I reject Defendants' assertion that PTR's forum choice warrants "no deference,"
several factors weigh against affording full deference to PTR.  Most importantly, MMT—an Israeli
corporation—is a real party in interest and may be *the only* real party in interest this case.  In cases
like this, where a shareholder brings suit "derivatively in the name of a corporation, the Supreme
Court has held that the corporation is the real party in interest" and the shareholder is "at best the
nominal plaintiff." *See Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 733 (D. Del. 2003) (citing *Ross v.
Bernhard*, 396 U.S. 531, 538–39 (1970)) (discussing the real party in interest to derivative actions
in a subject-matter jurisdiction analysis); *see Koster*, 330 U.S. at 522–23 (holding that when a
shareholder brings a derivative action, the cause of action "is not his own but the corporation's"—
the corporation is "the real party in interest and he is allowed to act in protection of its interest").[5]
Because MMT is a real party in interest to this case and is a foreign company, the presumption in
favor of its choice of forum applies with less force. *See Piper*, 454 U.S. at 255.

Moreover, MMT is likely the *only* real party in interest, as PTR has not alleged a basis for
its direct claims and failed to respond to Defendants' argument that this is purely a derivative
action.  *Piper* requires the court to identify the real parties in interest in order to determine the
appropriate level of deference to the plaintiff's forum. *See* 454 U.S. at 255.  Here, that question
depends on whether PTR is bringing direct—in addition to derivative—claims. *See Koster*, 330 U.S.
at 522–23.  PTR styles its Complaint as both a direct and derivative action on behalf of MMT, but

---

[5] I note that, while this prevailing Supreme Court precedent would classify MMT as the real party in interest, there
are divergent philosophies as to whether the corporation on whose behalf a derivative action is brought is more
closely aligned with—and therefore the real party in interest to—the plaintiff or the defendant in that action. *See
generally* Subject-Matter Jurisdiction in Shareholder-Derivative Actions—Status, Citizenship, and Alignment of
the Corporation in Diversity Cases, 7C Wright & Miller Fed. Prac. & Proc. Civ. § 1822 nn.12, 13 (3d ed.) (2017)
(discussing these conflicting perspectives in the context of subject-matter jurisdiction analyses in shareholder
derivative actions).  However, since the FNC analysis generally is a balancing test, and the specific question of
deference to plaintiff's forum is a "sliding scale" of convenience, MMT's Israeli connections (its incorporation
and principal place of business) would be relevant even if I were to consider MMT as a real party in interest to
Defendants, rather than to PTR. *See Kisano*, 737 F.3d at 875 (citing with approval the "sliding scale" convenience
analysis set forth in *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001)).

to determine whether PTR is a real party in interest (by virtue of a valid direct claim) or merely a nominal plaintiff in its derivative claim (leaving MMT as the sole real party in interest), I must first determine what law governs the question of when MMT shareholders like PTR may bring a direct claim against MMT. Although the judiciary's interest in not having to "untangle problems in conflict of laws," is one basis justifying this FNC dismissal, a choice-of-law analysis on this narrow issue is essential. *See Piper*, 454 U.S. at 251.

Here, where the only possible basis for subject-matter jurisdiction is federal question jurisdiction, the court must "look to federal choice of law principles" to determine whether state or federal common law governs. *See Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 25 (1st Cir. 2000) (cited with approval by the Third circuit in *Doyle v. Se. Pennsylvania Transp. Auth.*, 398 F. App'x 779, 783 n.4 (3d Cir. 2010)); *see also Burks v. Lasker*, 441 U.S. 471, 476 (1979) ("Since we proceed on the premise of the existence of a federal cause of action, it is clear that our decision is not controlled by [*Erie*], and state law does not operate of its own force."). Those federal principles counsel that "corporations are creatures of state law" and "the first place one must look" to determine questions of corporate governance "is in the relevant State's corporation law." *Burks*, 441 U.S. at 477–78. Since MMT is a creature of Israeli law, Israeli corporation law defines the contours of derivative and direct actions against MMT.[6]

The parties must carry "the burden of adequately proving foreign law to enable the court to apply it." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999). PTR has not. Plaintiff does not allege or argue the basis for its direct claims under Israeli law (or any other law). In fact, very few of PTR's allegations involve PTR at all, and most of those are legal conclusions unsupported by factual allegations. *See, e.g.*, Compl. ¶¶ 68 ("Defendants have used . . . MMT's

_____

[6] Defendants' choice of law analysis, with which PTR seems to go along, applies Delaware choice-of-law rules (apparently assuming this case rests on diversity jurisdiction), but nevertheless arrives at Israeli law, via Delaware's internal affairs doctrine, as the relevant source of law for corporate governance questions like this. *See* Defs.' MTD 9–10, Pl.'s Resp. 10–11 (discussing Israel's pre-suit demand requirements).

confidential information to the detriment of [PTR].”), 69 (“Through the actions of the Defendants,

[PTR] and MMT were damaged.”).  Exacerbating this deficiency, PTR has been silent in response

to Defendants’ repeated arguments that this case is a derivative action only. *See* Defs.’ MTD 20

(“Plaintiff has brought this action merely as a shareholder of MMT, an Israeli entity.”); Defs.’

Reply 3 n.1 (“Deference to PTR’s choice of forum is also inappropriate in a case like [this] one

which is a stockholder’s derivative suit.”).

Absent any assistance from PTR in applying the relevant foreign law, my own review of

Israel’s Companies Law, 5759-1999 (translated to English from Hebrew), reveals that it recognizes

a distinction between direct and derivative actions, but provides no guidelines for distinguishing

between them.  Without any discernable facts suggesting that PTR has suffered harm that is

different or apart from the harm it alleges MMT has suffered—or guidance from PTR suggesting

that Israeli corporation law provides a different basis for direct claims—I conclude that PTR brings

only derivative claims.  As such, the real party in interest is MMT, a foreign corporation entitled to

lesser deference.  However, because I ultimately conclude that the balance of conveniences tips

decidedly toward FNC dismissal even if the action includes a valid direct claim, and PTR is thus a

real party in interest, the question is non-dispositive.

Having identified the factors that cut against full deference to PTR’s forum choice,[7] I now

review whether PTR has made a showing of convenience (either for itself or on behalf of MMT) to

counter them.  In an FNC inquiry, a district court “must assess, and articulate, whether the

considerable evidence of convenience has . . . overcome any reason to refrain from extending full

---

[7] In addition to identifying MMT as a foreign real party in interest, I also consider—but give far less weight to—
the Supreme Court’s counsel not to “overlook the peculiarities” of derivative actions and to afford lesser deference
to plaintiffs’ choice of forum in derivative actions. *See Koster*, 330 U.S. at 524–25.  Citing *Koster*, Defendants
argue that “[d]eference to PTR’s choice of forum is . . . inappropriate” because this is a stockholder’s derivative
suit. Def.’s Reply 3 n.1.  But *Koster*’s warning is most appropriately heeded in derivative cases “where there are
hundreds of plaintiffs, all equally entitled to voluntarily invest themselves with the corporation’s cause of action”
and where the plaintiff “has a small financial interest in a large controversy.” *Koster* at 523-24.  Here, where PTR
is one of two shareholders in MMT (along with Jeremy), and is itself owned by only two people, *Koster*’s logic
applies with far less force.

deference to the foreign plaintiff's choice." *Kisano*, 737 F.3d at 875–76 (citations omitted). "This is not a precise inquiry, but, generally, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain [FNC] dismissal." *Id.* PTR has made no such showing.

The entirety of PTR's convenience argument is that it is organized under Delaware law, based in New York, and owned by New Yorkers. This is not enough. Although PTR is a creature of Delaware law, its connection to the forum ends there. PTR has not alleged that it has buildings, business, contracts, or any other connection in Delaware. For PTR's owners, who live in New York and have a second home in Israel, Delaware is admittedly closer than Israel, but is not their home forum. PTR has pointed to no aspect of the case that relates to Delaware, other than the mere act of CardioLync's incorporation—no evidence, no parties, no contracts, and no controlling law. As I discuss in more detail below, nearly all of the relevant parties (including MMT, a real party in interest), non-party witnesses, and evidence are located in Israel, an ocean away. Moreover, MMT was created by Israeli law, and Jeremy's employment agreement was executed there.[8] Even assuming PTR is a party in interest, its organization under Delaware law—PTR's sole tether to this forum—does not represent a "bona fide connection" to Delaware sufficient to restore full deference to its forum choice. *See Kisano*, 737 F.3d at 876 (agreeing that plaintiffs did not make a "strong showing of convenience" where "the agency relationship was formed in Israel, all negotiations for the [] deal took place in Israel, and most of the conduct for the claims at issue took place in Israel").

I must weigh all of these considerations to identify the appropriate deference to PTR's forum choice. The Third Circuit does not require courts "somehow to mark on a continuum the precise degree of deference it accords a plaintiff's choice"—indeed, it is "impossible to quantify"

---

[8] Technically, the employment agreement was never signed but PTR alleges that "all parties operated in accordance with its terms and treated it as binding in all respects." Compl. ¶ 31.

the applicable level of deference. *Lacey I*, 932 F.2d at 179 (citation omitted). But it is clear that imposing a "more stringent burden" on defendants by requiring them to establish "a strong preponderance in favor of dismissal" satisfies the court's duty. *Id.; see also Eurofins*, 623 F.3d at 161 n.15 (holding that the trial court had given the corporate plaintiff's choice of forum its "due deference" and balanced the relevant factors when it found that "the plaintiffs' choice of a Delaware forum [was] far outweighed by the burdens that a Delaware forum would impose on these defendants"). I heed the Third Circuit's warning that courts "should not assign talismanic significance to the citizenship or residence of the parties" because "[t]he focus of the deference inquiry in the Supreme Court, [and] in this Court . . . is on convenience, not on the particular significance of a party's residence or citizenship." *Kisano*, 737 F.3d at 875. With that focus, I afford less than full deference to MMT, as a foreign real party in interest. And, even assuming PTR is a real party in interest, I afford only slightly more deference to it, as it has a one-dimensional connection to this forum and presented no compelling reasons to think its forum choice was based on convenience to it or MMT. Still, Defendants must establish a "strong preponderance in favor of dismissal" through the relevant private and public interests. *See Lacey I*, 932 F.2d at 179.

C. Private interests

    Defendants have identified compelling private interests that weigh heavily in favor of Israel and against Delaware. In *Gilbert*, the Supreme Court identified the bounds of the private interest analysis:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the [enforceability] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

330 U.S. at 508. To determine the relative ease of access to evidence and the availability of witnesses, courts must "scrutinize the substance of the dispute . . . and determine whether the pieces

of evidence cited by the parties are critical, or even relevant to, the plaintiff's cause of action and to any potential defenses to the action." *Lacey I*, 862 F.2d at 46. Defendants must provide "enough information to enable the [Court] to balance the parties' interests" but need not present affidavits detailing the kinds of evidence and testimony that would be available to them in the alternative forum but not in this forum. *See Piper*, 454 U.S. at 258 (stating that "such detail is not necessary" and finding it sufficient that defendants had asserted that "crucial witnesses [were] located beyond the reach of compulsory process, and thus [would be] difficult to identify or interview").

Within these limits, Defendants set out strong private interests in favor of Israel and against PTR's choice of forum. Defendants argue that, in contrast to the "utter lack of private interest factors connected to Delaware," nearly all of the evidence and witnesses, including the essential (non-party) witness, Jeremy, are located in Israel, and that PTR's owners (the Minkowitzes) have already engaged Israeli counsel in this action. Defs.' MTD 22; Defs.' Reply 4–5. With all of the major players—MMT, Jeremy, Gam, and (soon) Dr. Levy—based in Israel, I am convinced that "fewer evidentiary problems would be posed" if the trial were held in Israel because it is safe to say that a "large proportion of the relevant evidence" is located there. *See Piper*, 454 U.S. at 258. Moreover, the operative MMT contract with Jeremy was executed in Israel and Jeremy, a non-party whose conduct is at the center of this dispute, is subject to compulsory process there. *See Eurofins*, 623 F.3d at 162 (holding that the following tipped the balance in favor of litigation in France, the alternative forum: that the "contract at issue was finalized and executed in France," that nearly all of the sources of proof were there, and that "the third-party at the center of this contract dispute conducts business in France").[9]

Plaintiff's private interest arguments in favor of Delaware and against Israel have either

---

[9] It is also noteworthy, in terms of relative ease of access to proof, that "documents in English need not be translated because Israel courts are typically proficient in English." *Kisano*, 737 F.3d at 878.

been rendered moot or are significantly less weighty. PTR counters that Delaware is "the one place where all Defendants are subject to the court's personal jurisdiction," that the Minkowitzes would need to travel from New York for the trial—a more burdensome trip than to Delaware—and that the "miscellaneous pieces of evidence" located in Israel can be obtained through the Hague Evidence Convention. Pl.'s Resp. 25–26. But, as discussed above, all Defendants have consented to jurisdiction in Israel, so an alternative forum exists. And while forcing the Minkowitzes to travel to Israel, rather than to Delaware, for the trial is certainly a relevant private interest, the fact that they are part owners of an Israeli corporation (MMT), maintain a home in Israel, and spend "extended periods of time" there each year diminishes the burden the forum would otherwise impose. *See* Jeremy Decl., ECF No. 27. Moreover, the Minkowitzes are not parties to the action but are instead shareholders to the nominal plaintiff, PTR, itself a shareholder of the real party in interest.

Finally, and most significantly, PTR's assertion that there is important evidence in Delaware and only "miscellaneous pieces of evidence" in Israel is unconvincing.[10] The only potentially relevant evidence PTR has identified in Delaware is CardioLync's incorporation documents, which are instantaneously available to any member of the public online.[11] And while there may be some relevant evidence outside of Israel, the Complaint and existing record suggests that the "great majority of proof and witnesses" are in Israel, which weighs toward dismissal. *See Eurofins*, 623 F.3d at 162. PTR's contention that it is possible to obtain evidence from Israel through the Hague Evidence Convention only highlights how much less burdensome it would be to obtain that

---

[10] For PTR's claim on behalf of MMT, *Koster*'s guidance on the evidentiary realities in derivative actions is apt: "It might well be that the books, records and witnesses to establish all or a part of the cause of action are in or near the chosen forum. But in other cases they may all be in some distant jurisdiction, perhaps that of the defendants, as in the case here. In the ordinary suit it is plaintiff's own books and records and transactions that are important—in the derivative action it is more likely that only the corporation's books and records and transactions will be important . . . ." 330 U.S. at 526.

[11] Basic information about CardioLync's incorporation is available for free through Delaware's Division of Corporations: https://tinyurl.com/hwszf8v. A payment of $20 grants any member of the public immediate access to CardioLync's "status, tax, and history information."

evidence *without* the aid of an international treaty by simply litigating the dispute in the forum where the majority of evidence sits. I conclude that the private interests weigh heavily in favor of dismissal.

D. Public interests

I am likewise persuaded that the public interests Defendants raise tilt decidedly in favor of dismissal. *Gilbert* identified the public interests relevant to an FNC analysis:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach . . . . There is a local interest in having localized controversies decided at home.

330 U.S. at 508–09. Defendants argue that, because the alleged trade secrets were developed by MMT in Israel, Jeremy's employment contract with MMT was executed and performed there, and the alleged misappropriation of trade secrets "all took place while Jeremy and Gam were in Israel," Israel and its courts have a strong interest this dispute, whereas Delaware does not. Defendants further argue that Israeli law governs the procedural requirements for this derivative action and substantive Israeli law will likely govern most of PTR's claims. I agree and conclude that this dispute lacks any meaningful connection to Delaware and would pose administrative difficulties by requiring the court to engage in a separate choice-of-law analysis for each of PTR's claims and, eventually, to discern and apply Israeli substantive law to some or most claims.

To determine this dispute's connection to PTR's chosen forum, I "consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct" to Delaware. *See Lacey I*, 862 F.2d at 48 (citation omitted). In *Kisano*, where the Third Circuit upheld FNC dismissal, the court noted in its public interest analysis that the parties "met in Israel, discussed and negotiated the [relevant transaction] in Israel, discussed the [subject] coal deals in Israel, and most interactions with each other took place in Israel" or other places outside the plaintiff's chosen

forum. 737 F.3d at 878. Similarly, Jeremy and Dr. Minkowitz developed the idea of MMT together in Israel, developed and incorporated MMT there, created Jeremy's employment contract there, and based MMT's operations (including development of the alleged trade secrets) there.[12] *See, e.g.*, Compl. ¶¶ 14–20, 27, 31, 40, 44. Thus here, as in *Kisano*, the dispute has strong connections to Israel and no connection to Delaware other than CardioLync's incorporation. 737 F.3d at 878. And while "Delaware has a significant interest in actively overseeing the conduct of those owing fiduciary duties to the shareholders of Delaware corporations, that interest is also insufficient to outweigh the locus of the alleged culpable conduct in this case." *See Eurofins*, 623 F.3d at 163 (citation omitted).

As to the difficulties posed by governing law in this case, *Piper* instructs that FNC "is designed in part to help courts avoid . . . complex exercises in comparative law." *See* 454 U.S. at 251. Thus, "where the court would be required to untangle problems in conflict of laws, and in law foreign to itself," the public interest factors point towards dismissal. *Id.* While PTR admits that MMT is a creature of Israeli law, PTR does "not concede that Israeli law applies in this matter." In fact, PTR resists any choice-of-law analysis at this stage, arguing that "such eventual analysis has no relevance to resolution of the present [FNC] dispute." Pl.'s Resp. 28 (citing only *Zazzali v. Hirschler Fleischer*, P.C., 482 B.R. 495, 517 (D. Del. 2012), a bankruptcy case that did not involve an FNC analysis and where the court went on to assume, without holding, that one of two state's laws would govern the claim). But Plaintiff's objection is directly undermined by Supreme Court precedent. Although one aim of the FNC doctrine is to help courts avoid "untangl[ing] problems in conflict of laws, and in [foreign law]," the FNC analysis explicitly calls on courts to determine whether keeping the case would require them to apply foreign law, or two sets of laws. *See Piper*,

---

[12] I note PTR's allegation that a "newly-hired team in New York" may have contributed to MMT's development in late 2015. Compl. ¶ 42. But this is of only limited significance since Jeremy allegedly refused to cooperate with them and "never traveled to the United states to visit" them. *See* Compl. ¶ 44.

454 U.S. at 251, 260 & n.29 (stating that the trial court had properly considered "its own lack of familiarity with Scottish law" and that a "trial involving two sets of laws would be confusing to a jury"). It is impossible to carry out this charge without performing at least a limited choice-of-law analysis. *See id.* at 260 (holding that the trial court's choice-of-law analysis, and its consideration of the practical problems that could flow from applying both Scottish and Pennsylvania law, was "clearly appropriate under *Gilbert*").

Here, Defendants have set forth a compelling choice-of-law analysis, suggesting that Israeli law would govern many of PTR's claims and, in doing so, have highlighted the complex choice-of-law analyses that would be unavoidable in this case. *See* Defs.' MTD 21–29. As established above, the parties' dispute over whether the pre-suit demand requirement has been met in the derivative claim is a question of Israeli corporation law. It also seems clear that Israeli contract law governs Jeremy's employment contract with MMT. *See Eurofins*, 623 F.3d at 162 (in a case involving breach of contract and fiduciary duty, advising that courts should consider whether the contracts underlying the dispute are governed by the plaintiff's chosen forum).[13] As for PTR's nine state law claims, Defendants correctly state that federal choice of law principles direct the court to apply the forum state's choice-of-law rules to determine which state's substantive law applies. *See* Defs.' MTD 25 (citing *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005)). Delaware choice-of-law rules, in turn, rely on the Restatement's "most significant relationship test." *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 46–47 (Del. 1991) (adopting the test from the Restatement (Second) of Conflict of Laws § 145 (1971) to determine choice of law in both tort and contract claims). Without engaging in a burdensome claim-by-claim analysis, I merely observe that the Restatement's test appear to tilt decidedly toward Israeli law here. *See, e.g.*, § 145 cmt. e (when "the interest [at stake]

---

[13] In *Eurofins*, the court held that FNC dismissal was appropriate even where the underlying contracts were governed by Delaware law because the litigation focused on the foreign defendant's alleged breach of contract and fiduciary duties.

is a business or financial one, such as in the case of unfair competition, [or] interference with contractual relations," "a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place").[14]

E. Balancing

To prevail on their FNC motion, Defendants must show that the balance of private and public interest factors "tips decidedly in favor of trial in the foreign forum," outweighing the deference to PTR's chosen forum. *See Lacey I*, 932 F.2d at 180. Defendants have made that showing. It is clear that PTR's choice of forum imposes a "heavy burden" on Defendants in terms of access to evidence and witnesses, and would pose significant difficulties for the court by requiring complex choice-of-law analyses and the application of Israeli corporations and substantive law—all in a case that has only a remote connection to Delaware. *See Piper*, 454 U.S. at 249. PTR's central argument in favor of Delaware is its organization under Delaware law. But today, "corporations often obtain their charters from states where they no more than maintain an agent to comply with local requirements, while every other activity is conducted far from the chartering state." *Koster*, 330 U.S. at 527–28. That PTR has chosen to organize under the laws of Delaware is thus "entitled to little consideration" in the FNC analysis, "which resists formalization and looks to the realities that make for doing justice."

---

[14] Even if some of PTR's claims would be governed by Delaware law, that would not tilt the public interest analysis against dismissal; FNC dismissal can be appropriate "even where the alternative forum will be faced with questions of American law," *Eurofins*, 623 F.3d at 163.

**IV. Conclusion**

I conclude that trial in Israel will "best serve the convenience of the parties and the ends of justice" and accordingly grant Defendants' motion to dismiss on FNC grounds, contingent on Defendants' consent to personal jurisdiction in that forum.

_____/s/ Gerald Austin McHugh
United States District Judge